IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY CASTRO,
    *Plaintiff,*

v.

UNITED STATES OF AMERICA, et al.,
    *Defendants.*

Case Number: 3:13-cv-00571-JPG-PMF

## REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

    Plaintiff Anthony Castro is a former inmate with the Federal Bureau of Prisons and this lawsuit arises out of a slip and fall incident that occurred at United States Penitentiary ("USP") Marion. Castro filed suit on June 17, 2013 (Doc. 1) and the complaint was later screened by Judge Gilbert pursuant to 28 U.S.C. § 1915A. (Doc. 11). In the § 1915A screening order Judge Gilbert held that Castro asserted two colorable claims; a Federal Tort Claims Act ("FTCA") negligence claim against the United States, and an Eighth Amendment deliberate indifference to serious medical needs *Bivens* claim against various USP Marion medical staff members. *Id*. The *Bivens* Eighth Amendment claim was later dismissed because Castro failed to exhaust administrative remedies prior to filing suit (FTCA claims and prison *Bivens* claims have different administrative remedies procedures). (Doc. 139). Defendant United States now moves for summary judgment as to the remaining FTCA claim. (Doc. 126). Castro opposes the motion. (Doc. 131). For the following reasons, it is RECOMMENDED that the motion for summary judgment filed by defendant United States be denied.

## I.      BACKGROUND

The slip and fall incident that gives rise to this litigation occurred on July 11, 2012 at the USP Marion Federal prison. At approximately 8:00 P.M. on that date Castro was leaving his unit (the "N" unit) to go to the pill line at Medical Services to receive his prescribed medication, Elavil. (Castro deposition, Doc. 126-7, p. 4). The pill line was approximately 50 yards away from Castro's unit. *Id*. As Castro left his unit he walked up a sloping ramp, through the "9 ½ Grill" corridor and into Medical Services. (Doc. 126-7, p. 5). The corridors are regularly mopped by prisoner orderlies around that time of day, but Castro did not notice anyone mopping on that date. (Plaintiff's answers to defendant's interrogatories, Doc. 126-6, p. 7).

Castro waited in the pill line for 20 to 30 minutes before receiving his Elavil. (Doc. 126-7, p. 6). After receiving the medication, Castro proceeded to return to his unit. Castro walked through the "9 ½ Grill" corridor and back down the ramp. (Doc. 126-6, p. 6). As Castro was about 7 or 8 feet down the ramp, he slipped and fell backwards. (Doc. 126-7, p. 5). Castro landed hard on his back and injured his back, ankle, hips and neck.  (Doc. 126-6, p. 3). As Castro was on the ground he felt that the floor was wet, however he had not noticed the water on the ground prior to the fall. (Doc. 126-7, p. 6). Several USP Marion correctional officers were at the end of the corridor towards the unit doors during the fall; Michelle Emery, Richard Lance, Bradley Mathus and Jeff Richey. (Doc. 126-7, p. 7). After Castro fell some of the correctional officers laughed, and one of the male correctional officers remarked that "They should of [sic] used the signs." *Id.* There were no "wet floor" signs placed in the vicinity. A tall African American prisoner orderly named Floyd or "Snake" was also standing with the correctional officers. (Doc. 126-7, p. 6).

C/O Lance then walked over and asked Castro if he could get up. (Doc. 126-7, p. 5). Castro said "no" and C/O Lance helped him to his feet. *Id*. C/O Lance walked Castro back to "N" unit and Castro sat down in a chair in front of the unit television. (Doc. 126-7, p. 7). C/O Lance then called over the radio to request that Nurse Cullers examine Castro. (Doc. 126-1, p. 3). Nurse Cullers examined Castro and directed him to take some ibuprofen and to apply ice to his neck. (Doc. 126-7, p. 8).

Attached to the defendant's motion for summary judgment are declarations signed by Lance, Mathus, Richey and Emery. (Doc. 126-1, 126-2, 126-3, 126-4). All four state that they do not recall the corridor ramp being wet or slippery that night, nor do they recall the area being mopped prior to the fall. *Id.* Additionally, the four declarations state that no inmate or staff member had reported that the area was wet or slippery that night. *Id*. Also attached to the defendant's motion for summary judgment is the declaration of Mandie Bagwell, a Nurse Practitioner at USP Marion. (Doc. 126-5). Nurse Bagwell states in her declaration that USP Marion medical records note that Castro received his medication at approximately 8:40 P.M. on July 11, 2012. *Id.* Furthermore, Nurse Bagwell states that although inmates are provided with water at the pill line, inmates are allowed to bring their own beverages. *Id.*

Castro states in his response to the defendant's motion for summary judgment that he was housed at USP Marion from March 14, 2007 until June 16, 2015. (Doc. 131, p. 2). Castro regularly used the P.M. pill line and had not "missed the pill line more than 5 times in 7 years." *Id*. Castro also notes that he is familiar with the cleaning procedures at USP Marion. *Id.* At 8:20 P.M. the night orderlies were allowed out of their assigned housing units to clean the corridors. *Id.* There were "wet floor" signs in the cleaning supplies storage room, but the orderlies often neglected to place them. (Doc. 131-4). The orderlies were allowed back into their housing units

to watch television after they finished cleaning. *Id.* However if the orderlies placed the wet floor signs, the orderlies would be obligated stick around until the floors dried, and then pack up the signs. *Id.* This would of course delay their return to their housing units.

In late July, 2012 Castro filed this FTCA claim with the BOP. (Doc. 95-3, p. 2). The claim was denied by the BOP on January 16, 2013. (Doc. 95-3, p. 3). Castro then filed this lawsuit on June 17, 2013. (Doc. 1). Defendant United States now moves for summary judgment.

## II.   ANALYSIS

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When presented with a motion for summary judgment "all evidence must be construed in the light most favorable to the party opposing summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986). The summary judgment phase of litigation has been described as the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

Castro filed this lawsuit pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 1346, 2671 *et seq*. The FTCA acts as a waiver of United States sovereign immunity "and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6 (1962). Because the incident occurred at USP Marion, we apply Illinois tort law. See 28 U.S.C. § 1346(b)(1) (the "law of the place where the act or omission occurred" is controlling for FTCA claims).

To recover damages on a negligence claim "a plaintiff must allege and prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 256, 720 N.E.2d 1068, 1071 (1999). Additionally, Illinois implements a "modified comparative negligence" system. This means that a plaintiff can recover damages in a negligence action even though they were partially at fault, so long as the "the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought[.]" 735 ILCS 5/2-1116.

Under the Illinois Premises Liability Act, 740 ILCS 130/1, *et seq*., a landowner owes a duty to entrants of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." No distinction is made between invitees and licensees.[1] 740 ILCS 130/2. For foreign substance slip and fall cases (as opposed to cases involving accumulations of snow, ice or rainwater, such as typically found in building entryways), the Illinois Supreme Court held that a business owner will be liable under the following circumstances;

> [1] if [the substance] was placed there by the negligence of the proprietor or his servants; or, [2] if there is no showing how the substance got on the premises, if it appears that the proprietor or his servant knew of its presence, or [3] that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered. Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive; whereas, if the substance is on the premises through

---

[1] For a discussion of the old common law licensee / invitee distinction, see Restatement (Second) of Torts §§ 342-343A (1965).

acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor.

*Donoho v. O'Connell's, Inc.*, 13 Ill. 2d 113, 118, 148 N.E.2d 434, 437 (1958) (internal cites omitted). If a dangerous condition does exist on the land, such as a slippery foreign substance, the owner's duty of reasonable care will generally include an obligation to warn of the dangerous condition, or rectify it. See *Pageloff v. Gaumer*, 365 Ill. App. 3d 481, 483, 849 N.E.2d 1086, 1088 (2006).

In this case, there is some uncertainty as to the source of the liquid that Castro slipped on. Castro asserts that the floor was wet because it was recently mopped. Castro stresses the fact that he overheard someone state "they should of used the signs" immediately after he fell. Defendant United States argues that because no one actually observed any mopping that evening prior to the fall, the wetness was likely the result of a spill or some other unknown source. When the facts are construed in Castro's favor, he has presented sufficient evidence to survive the defendant's motion for summary judgment. A factfinder could reasonably infer that the foreign substance Castro slipped in was soapy water, or some other cleaning product used in mopping the floors, and not, as the defendant suggests, a spilled drink.

## RECOMMENDATIONS

It is RECOMMENDED that defendant United States' motion for summary judgment be DENIED.

SO RECOMMENDED.

Dated: June 7, 2016

> *s/ Philip M. Frazier*
> **PHILIP M. FRAZIER**
> **UNITED STATES MAGISTRATE JUDGE**